UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

EMMA NORTON,

     Plaintiff,                                     Case No.

vs

WAYNE F. CROWE, JR.,
JONATHAN D. BROWNING,
ANGELIQUE D. CAMFIELD-KUIPER,
THE LAW FIRM OF WAYNE F. CROWE, JR.,
 PLLC, d/b/a WEALTHY STREET LEGAL
 and d/b/a BROOKHILLS LEGAL SERVICES,
BROOKHILLS PAYROLL, LLC, and
CASCADE LEGAL SERVICES, PLLC,

     Defendants.

## **COMPLAINT AND JURY DEMAND**

     Plaintiff Emma Norton, by and through her attorneys, The Googasian Firm,

P.C., alleges as follows:

### **Introduction**

     1.    This diversity action sounding in legal malpractice arises from acts and

omissions by one or more Michigan entities owned and/or managed by Defendant

Wayne F. Crowe, Jr., and by Michigan attorneys acting as agents of one or more of

those entities, including Defendant Crowe, Defendant Jonathan D. Browning, and Defendant Angelique Camfield-Kuiper.

2.      Defendant Crowe publicly states the following when marketing himself to people needing legal help with respect to divorces: "Life doesn't always go the way we plan. Divorce is one of those things we don't expect. But when it happens, you need to have the best legal counsel you can find. I'm Wayne Crowe, and I have built my career specializing in family law and aggressively representing people who want to protect what is rightfully theirs. No attorney will fight harder to represent you than me. In your divorce case, your custody case, or your child support case, call me to schedule a time to discuss your situation. Let's win. For me, it's personal."

3.      Defendant Crowe also publicly states that his law firm "is committed to offering the highest quality representation for clients and their loved ones in Michigan. Our attorney in Grand Rapids understands the emotional weight and stress that these cases can have, which is why we take the time to get to know you and your situation, building a professional, yet friendly relationship with every client so we can help determine their best course of action. Our firm has over a decade of legal experience across local courts. With our help, your matter is in good hands."

4.      Defendant Crowe also publicly states, "Our attorneys are dedicated to reducing the amount of stress involved in your case. From the time you first call us until your family law matter is resolved, you can rely on us for sound guidance and

caring representation. We strive to make the entire experience as stress-free and simple as possible for you and your family."

5.    None of this was true for Plaintiff Emma Norton, one of Defendant Crowe's divorce clients.

6.    Defendant Crowe and other attorneys employed and/or supervised by him committed numerous acts of professional negligence during their representation of Ms. Norton from 2023 to 2025, after her husband literally sent her packing to Florida with a recliner and a mini fridge following two decades of life as a homemaker in Whitehall.

7.    After Ms. Norton was served in Florida with a summons and complaint in a divorce action initiated in Muskegon County Circuit Court by her husband in April 2023, she located Defendant Crowe via his internet marketing and retained his firm to represent her.

8.    During the course of the representation, Ms. Norton made numerous phone calls and sent dozens of texts and messages through the law firm's client portal seeking information about the status of her case, but Defendant Crowe and others employed by or supervised by him repeatedly failed to respond.

9.    In particular, Ms. Norton repeatedly sent messages with regard to the status of, and plans for, a November 25, 2024, trial, following her receipt of information about a mediation scheduled for December 12, 2024.  Again, Defendant

Crowe and others employed or supervised by him repeatedly failed to respond to Ms. Norton's inquiries about the November 25, 2024, trial date.

10.    Eventually, on the scheduled trial date of November 25, 2024, the Circuit Judge granted a default judgment of divorce in favor of her husband, with no division of marital property and no award of spousal support to Ms. Norton, after Defendants and Ms. Norton failed appear in court on that date. Ms. Norton later learned about the default judgment from her ex-husband's attorney.

11.    Defendants filed a motion to vacate the default judgment, stating, in part, "Despite reaching out to the firm with questions regarding the [November 25, 2024, trial date's] status, as evidenced by her messages, [Ms. Norton] received no response." At the hearing on the motion, one of the Defendants, Jonathan Browning, told the judge, "I would consider this to be entirely our mistake."

12.    The Circuit Court subsequently denied the motion to vacate default judgment as well as a subsequent motion for reconsideration.

13.    A claim of appeal to the Michigan Court of Appeals was prepared and filed by Defendants, but it was untimely filed and dismissed for lack of jurisdiction.

14.    In a Michigan Court of Appeals' Order dated April 8, 2025, dismissing the claim of appeal as of right on jurisdictional grounds due to untimeliness.

15.    After losing the post-judgment motions in the Circuit Court and the appeal due to their professional negligence, Defendants never informed Ms. Norton

of the status of her case or the additional acts and omissions of professional negligence that they had committed following the default judgment.

16.     Numerous emails, texts, and client portal messages sent by Ms. Norton inquiring about the status after the default judgment went unanswered by Defendants.

17.     Defendants hoped that by repeatedly ignoring their client's inquiries about what had happened with respect to efforts to set aside the default judgment, Ms. Norton would simply go away.

18.     Instead, Ms. Norton now seeks compensation for the damages that Defendants have caused to her.

19.     As a direct and proximate result of Defendants' acts and omissions of professional negligence, Ms. Norton is destitute.

20.     Following entry of default judgment in November 2024, she received notice that her ex-husband had discontinued her health insurance that had always been provided through his employment, and she was left with no coverage or means to pay for treatment and medication for serious health problems.

21.     As a direct and proximate result of Defendants' acts and omissions of professional negligence, Ms. Norton did not receive a fair and equitable division of marital property.

22.    As a direct and proximate result of Defendants' acts and omissions of professional negligence, Ms. Norton did not receive any spousal support despite more than 20 years as a homemaker in which she was reliant on her husband's income and his employer-provided health insurance.

23.    Now, Ms. Norton is essentially homeless in Florida, living in a trailer that does not belong to her in the backyard of an acquaintance's home.

24.    Ms. Norton has limited health insurance through a Florida program for the homeless.

25.    Ms. Norton subsists on food stamps and other public benefits.

26.    Ms. Norton suffers from mental anguish, embarrassment, humiliation, and other damage relating to her own attorneys having failed her in court proceedings and having ignored her repeated inquiries about those proceedings.

27.    Defendant Crowe pronounces that the clients of his firm receive "sound guidance and caring representation" and that "[w]ith our help, your matter is in good hands."

28.    During the representation of Ms. Norton that gives rise to this malpractice action, the complete opposite was true.

## Parties

29.    Ms. Norton is a citizen of Florida, and she currently lives full-time in Florida.

30.     Defendant Wayne F. Crowe, Jr. is a citizen of Michigan, and he currently lives and practices law in this District.

31.     Defendant Jonanthan Browning is a citizen of Michigan, and he currently lives and practices law in this District.

32.     Defendant Angeligue D. Camfield-Kuiper is a citizen of Michigan, and she currently lives and practices law in this District.

33.     At relevant times to this action, Defendant The Law Firm of Wayne F. Crowe, Jr., PLLC ("Defendant Crowe Firm") has been a Michigan business entity that has engaged in business in this District.

34.     At relevant times to this action, Defendant Crowe Firm had certificates from the State of Michigan to operate under the assumed names of "Wealthy Street Legal" and "Brookhills Legal Services."

35.     Defendant Brookhills Payroll LLC ("Defendant Brookhills Payroll") is a Michigan business entity that engages in business in this District. Upon information and belief, Defendant Brookhills Payroll is the successor name and/or successor entity for Defendant Crowe Firm.  In this action, Defendant Crowe Firm and Defendant Brookhills Payroll LLC are referred to collectively as "Defendant Crowe Firm" because they are the same entity.

36.     Defendant Cascade Legal Services, PLLC ("Defendant Cascade Firm") is a Michigan business entity that engages in business in this District.

## Jurisdiction and Venue

37.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

38.    Venue exists pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(1).

39.    The amount in controversy exceeds $75,000, exclusive of interests and costs.

## Common Allegations

### Ms. Norton is exiled to Florida by her husband

40.    As of January 2023, Timothy Norton and Emma Norton had been married for nearly 20 years in Michigan, where they lived in Whitehall and where Ms. Norton had been a homemaker and raised Mr. Norton's children from a prior marriage.

41.    While Ms. Norton had managed the home and children, Mr. Norton had worked and provided their family with income and health insurance.

42.    In January 2023, Mr. Norton informed Ms. Norton that he wanted to separate and that she should move immediately to Florida to live with one of her daughters.

43.    Mr. Norton told Ms. Norton to pack bags, pressured her to sign some paperwork, drove her to the airport for a flight to Florida, provided her with some

limited funds, and shipped some belongings to her, including a recliner and a mini fridge.

44.    Thereafter, in or around April 2023, Mr. Norton commenced divorce proceedings against Ms. Norton in Muskegon County Circuit Court, and Ms. Norton was served with a summons and complaint in Florida.

**Ms. Norton Retains Defendants to Represent Her in the Divorce**

45.    Ms. Norton, researching from Florida her need for legal help in Michigan, located Defendant Crowe Firm via the internet.

46.    On or about May 3, 2023, Ms. Norton signed a retainer agreement with Defendant Crowe Firm – on letterhead identifying itself as "the Wealthy Street Law Firm" – for representation in her divorce matter.  The letter stated that the cost of Defendant Crowe Firm's services in the divorce matter would be a flat fee of $3,500.

47.    In or about July 2024, Defendant Crowe Firm required Ms. Norton to pay an additional fee of $3,500 as it continued its divorce representation, following Mr. Norton's re-filing of the divorce case after the initial case had been dismissed that month by the Circuit Judge due to lack of progress.

48.    The retainer agreement, prepared by Defendant Crowe, stated in closing, "Rest assured that your case will be handled with the highest level of professionalism, respect and care. The Law Firm will do everything allowed by the laws and ethics to satisfactorily resolve your case."

49.    These statements proved to be false.

50.    Defendants Crowe, Browning, and Camfield-Kuiper each provided representation thereafter to Ms. Norton in divorce proceedings in Michigan.

51.    From at least May 2023 through at least April 2025, Defendants Crowe Firm, Crowe, Browning and/or Camfield-Kuper provided representation to Ms. Norton in divorce proceedings.

52.    At all relevant times, Defendants Crowe, Browning and/or Camfield-Kuper were employees and/or actual or ostensible agents of Defendant Crowe Firm.

53.    In a trial brief that Defendants filed on behalf of Ms. Norton in January 2024, Defendants asserted that Ms. Norton should be awarded in excess of $100,000 in an equitable division of the marital estate and in equitable spousal support.

54.    Upon information and belief, Defendants' trial brief significantly undervalued the marital estate and the amount of spousal support that Ms. Norton was equitably entitled to receive.

55.    Throughout the representation, Ms. Norton experienced unresponsiveness from Defendant Crowe Firm and its attorneys and other personnel during her repeated efforts to ascertain the status of her case via the law firm's client portal as well via text messages and phone calls.

56.     From May 2023 through April 2025, Ms. Norton sent more than 30 messages to Defendant Crowe, Defendant Browning, and/or Defendant Camfield-Kuiper seeking status updates, to which she did not receive a response.

57.     In addition, from June 2023 through May 2025, Ms. Norton sent more than 20 messages to staff members of Defendant Crowe Firm, including Ethan Rinehart, "Lauren," and "Paddy," seeking updates to which she did not receive a response.

58.     On or about September 16, 2024, following Mr. Norton's re-filing of the divorce action after a dismissal for lack of progress, the Circuit Court judge held a hearing in the matter at which Defendant Browning was in attendance on behalf of Ms. Norton, possibly filling in for Defendant Camfield-Kuiper.

59.     During the September 16, 2024, hearing, the Circuit Court judge decided to adjourn the trial of the case for approximately 75 days, resetting the trial on November 25, 2024.

60.     At the September 16, 2024, hearing, the judge told Defendant Browning and Mr. Norton's counsel that he was hoping the parties were "off to a better start so that we can finish this case in a timely manner," referring to the previous dismissal without prejudice for lack of progress.   "Folks," the judge said to Defendant Browning and the others, "Make that 75 days count."

61.    On or about November 7, 2024, responding to a week-old message from Ms. Norton inquiring about the status of her case, Defendant Camfield-Kuiper informed Ms. Norton that the divorce case was now, in fact, scheduled for a mediation in Michigan on December 12, 2024, that she should plan to attend in person.

62.    Defendant Camfield-Kuiper also informed Ms. Norton that she was resigning from Defendant Crowe Firm, that she anticipated the following day would be her last at the firm, and that Defendant Crowe and/or Defendant Browning would be taking over her representation, including in the forthcoming mediation.

63.    Thereafter, Defendant Camfield-Kuiper, Defendant Crowe, and Defendant Browning each failed to take reasonable steps to ensure that Ms. Norton would be properly represented with respect to the November 25, 2024, trial date, the December 12, 2024, mediation, and otherwise in the divorce proceeding.

64.    Between November 7, 2024, and November 25, 2024, Ms. Norton repeatedly sought updates from Defendants regarding her representation and the status of the trial date and the mediation, but received no response.

65.    On or about November 23, 2024, without any receipt of further guidance on status from Defendants, Ms. Norton purchased a plane ticket for what she understood to be an in-person mediation scheduled for December 12, 2024.

66.    On November 25, 2024, the Circuit Court Judge commenced the previously scheduled trial proceeding in Muskegon County Circuit Court with Mr. Norton and his counsel in attendance. With no one present on behalf of Ms. Norton at the scheduled date and time, the judge proceeded to enter a default judgment in favor of Mr. Norton, with no award of marital property or spousal support to Ms. Norton.

67.    On the following day, Mr. Norton's counsel transmitted a copy of the default judgment to Ms. Norton.

68.    In this professionally negligent representation, it was the client, Ms. Norton, who informed the attorneys, Defendant Crowe Firm and its attorneys, that a default judgment had been entered against her.

69.    On or about December 20, 2024, Defendant Crowe Firm, Defendant Crowe, and Defendant Browning filed a motion to vacate judgment with respect to the default judgment entered against Ms. Norton due to Defendants' professional negligence.

70.    In the December 20, 2024, filing, Defendants stated in part that Ms. Norton "reasonably assumed" the November 25, 2024, trial date was not proceeding in light of the mediation scheduled for December 12, 2024 "along with [Ms. Norton's] unanswered inquiries to her attorneys."

71.    Referring to Defendant Camfield-Kuiper's apparently recent resignation from the firm, Defendants also stated in the motion to vacate default judgment that there had been a "breakdown in communication with the firm."

72.    Defendants further stated, "This left [Ms. Norton] without adequate legal representation to notify her of the hearing or prepare her for court."

73.    Defendants further stated, "Despite reaching out to the firm with questions regarding the hearing's status, as evidenced by her message, [Ms. Norton] received no response."

74.    Defendants further informed the Circuit Court that "responsibility for the failure to appear" at the November 25 trial date "lies with [Ms. Norton's] attorneys, not [Ms. Norton] herself."

75.    On January 21, 2025, following a hearing at which Defendant Browning appeared, the Circuit Court denied the motion to vacate default judgment.

76.    On February 11, 2025, the Circuit Court denied a motion for reconsideration.

77.    On or about February 18, 2025, Defendant Camfield-Kuiper and Defendant Browning signed a substitution of attorney form filed in Muskegon County Circuit Court, setting forth that Defendant Browning was substituting for Defendant Camfield-Kuiper in the divorce proceeding.

14

78.    On or about March 11, 2025, Defendants Crowe Firm, Crowe, and Browning filed a claim of appeal on behalf of Ms. Norton in the Michigan Court of Appeals.

79.    On or about April 8, 2025, the Michigan Court of Appeals dismissed an appeal filed by Defendants on behalf of Ms. Norton for lack of jurisdiction.

80.    The Court of Appeals' Order stated in part:

Neither the January 21, 2025 order denying the motion to vacate the default judgment of divorce, nor the February 18, 2025 order denying reconsideration, are final orders appealable by right. . . . The November 26, 2024 default judgment of divorce was the final judgment appealable by right in this case, . . . but the March 11, 2025 claim of appeal was not timely filed and the time limit for filing a claim of appeal is jurisdictional. MCR 7.204(A)(1). The claim of appeal was not filed within 21 days of entry of the judgment. MCR 7.204(A)(1)(a). Moreover, the December 20, 2024 motion to vacate the judgment did not extend the time for filing an appeal of right from the judgment because the motion was not filed within the initial 21-day appeal period. *Id.* See also MCR 7.204(A)(1)(d). And, finally, the February 11, 2025 motion for reconsideration was also filed more than 21 days after entry of the judgment and, as such, did not extend the time for filing a claim of appeal from the judgment. *Id.* Dismissal is without prejudice to the filing of a late appeal, MCR 7.205(A)(4), provided such a filing meets all court rule requirements and is not time-barred.

81.    Defendants did not inform Ms. Norton regarding the outcome of the motion to vacate default judgment, the motion for reconsideration, or the appeal.

82.    Defendants did not file a late appeal on behalf of Ms. Norton.

83.    Defendants never informed Ms. Norton at any time after receipt of the Court of Appeals' dismissal order on April 8, 2025, that they had stopped representing Ms. Norton.

84.    As a direct and proximate result of Defendants' acts and omissions during their representation of Ms. Norton, Ms. Norton has suffered catastrophic harm, including, but not limited, the loss of her entitlement to an equitable division of the marital estate; the loss of equitable spousal support; and the incurrence of non-economic harm, including mental anguish, embarrassment, humiliation, and other damage relating to the malpractice.

85.    In their representation of Ms. Norton, Defendants failed her, ignored her, abandoned her, and then stopped communicating with her.

86.    Defendants' representation of Ms. Norton was malicious, willful, wanton, and so reckless or grossly negligent as to demonstrate a substantial lack of concern for whether injury would result to her.

87.    As a direct and proximate result of Defendants' acts and omissions, Ms. Norton now lives destitute in Florida with proper housing, resources, or insurance.

**Wayne Crowe's Entities, Suspensions,
and Actions in the Wake of the Notice of Malpractice**

88.    In or about 2006, Defendant Crowe was admitted to practice law in the State of New York, where he was raised and had attended law school

89.    In or about 2006, Defendant Crowe was admitted to practice law in the State of New York, where he was raised and had attended law school

90.    At relevant times since becoming a licensed New York attorney, Defendant Crowe has managed one or more entities engaged in the practice of law in New York, including The Franklin Law Firm, PLLC.

91.    Defendant Crowe currently maintains a website www.bronxdivorcelawfirm.com for his law practice in New York.

92.    In or about 2013, Defendant Crowe was admitted to practice law in the State of Michigan.

93.    At relevant times since becoming a licensed Michigan attorney, Defendant Crowe has managed one or more entities engaged in the practice of law, including Defendant Crowe Firm, Defendant Brookhills Payroll, and/or Defendant Cascade Firm.

94.    Defendant Crowe currently maintains a website www.wfcrowelaw.com for his law practice in Michigan.

95.    Defendant Crowe has used www.wfcrowelaw.com for websites marketing Defendant Crowe Firm and Defendant Cascade Firm.

96.    At all relevant times, Defendant Crowe has served as manager and resident of agent of Defendant Crowe Firm, Defendant Brookhills Payroll, and/or Defendant Cascade Firm.

97.     On or about June 25, 2025, Defendant Crowe and Defendant Crowe Firm, along with Defendants Browning and Camfield-Kuiper, were provided written notice of this malpractice claim, via certified and regular mail.

98.     On or about July 19, 2025, Defendant Crowe was suspended from the practice of law in Michigan for 90 days, pursuant to a reciprocal disciplinary proceeding under Michigan Court Rule 9.120(C) in connection with a three-month suspension of his license to practice law in New York in 2022.

99.     The New York suspension stemmed from a petition for violations of the Rules of Professional Conduct in New York, including, that Defendant Crowe had neglected legal matters, failed to promptly communicate with a client, failed to act with reasonable diligence and promptness and to provide competent representation, failed to promptly refund unearned legal fees, and engaged in conduct prejudicial to the administration of justice by, among other things, offering to refund monies paid in exchange for clients withdrawing their disciplinary complaints.

100.    On or about July 25, 2025, Defendant Crowe Firm filed restated articles of reorganization under the new name of Brookhills Payroll LLC, after Defendant Crowe was suspended from the practice of law in Michigan pursuant to an order of the Attorney Discipline Board and after receipt of notice of Ms. Norton's malpractice claim.

101.   On or about October 27, 2025, after reinstatement to the State Bar of Michigan following his suspension, Defendant Crowe organized Defendant Cascade Firm and arranged for articles of organization for Defendant Cascade Firm to be filed with the State of Michigan, also after receipt of notice of Ms. Norton's malpractice claim.

102.   Upon information and belief, Defendant Crowe Firm and Defendant Crowe have transferred assets, books, files and data relating to Defendant Crowe Firm to Defendant Cascade Firm, including, but not limited to, those relating to Ms. Norton.

103.   Upon information and belief, Defendant Crowe Firm and Defendant Cascade Firm are mere instrumentalities of Defendant Crowe.

104.   Upon information and belief, Defendant Cascade Firm is a mere instrumentality of Defendant Crowe Firm.

105.   Upon information and belief, Defendant Cascade Firm was organized to commit wrong and to defeat justice with respect to Defendant Crowe Firm.

106.   Upon information and belief, Defendant Crowe Firm and Defendant Cascade Firm have failed to observe corporate formalities.

107.   Upon information and belief, Defendant Crowe Firm and Defendant Cascade Firm have commingled funds and assets.

108.   Upon information and belief, Defendant Crowe Firm and Defendant Cascade Firm have identical ownership with one individual, Defendant Crowe, making all decisions without regard to entity structure.

109.   Upon information and belief, Defendant Crowe Firm and Defendant Cascade Firm share ownership, employees, websites, files, client information, and other data with one another.

110.   Upon information and belief, Defendant Crowe Firm and Defendant Cascade Firm share computers, a case management system, and other technology.

111.   Upon information and belief, Defendant Crowe Firm and Defendant Cascade Firm have utilized the same website domain – namely, www.wfcrowelaw.com.

112.   Upon information and belief, Defendant Crowe Firm and Defendant Cascade Firm lack separate books and records and fail to maintain accounting distinctions.

113.   Upon information and belief, Defendant Crowe and Defendant Crowe Firm created Defendant Cascade Firm to avoid existing obligations, strip assets, engage in sham transactions between the entities, and form a new entity to continue the same business after liabilities accrued for Defendant Crowe Firm.

114.   Upon information and belief, these actions by Defendant Crowe, Defendant Crowe Firm, and Defendant Cascade Firm have caused concrete harm to

Ms. Norton, including, but not limited to, interference with her ability to receive funds due to asset diversion following receipt of notice of Ms. Norton's malpractice claim.

## COUNT I – PROFESSIONAL NEGLIGENCE – ALL DEFENDANTS

115.   Plaintiff incorporates all preceding allegations by reference.

116.   At all relevant times, an attorney-client relationship existed between Defendants Crowe Firm, Crowe, Browning and Camfield-Kuiper, on the one hand, and Ms. Norton on the other hand.

117.   At all relevant times, Defendants each owed a duty of care to Ms. Norton to render legal services in conformance with the acceptable standard of care and to refrain from acts of professional negligence.

118.   Defendants each breached their duties to Ms. Norton in numerous ways, including, but not limited to, by:

    a.  Failing to do what a reasonably prudent attorney would have done in the same or similar circumstances to prevent entry of a default judgment against a client;

    b.  Failing to do what a reasonably prudent attorney would have done in the same or similar circumstances to represent a client's interests in divorce proceedings;

c.  Failing to do what a reasonably prudent attorney would have done in the same or similar circumstances when a client inquires as to the status of her case, including dates set for trial and mediation;

d.  Failing to do what a reasonably prudent attorney would have done in the same or similar circumstances to discover the value of the client's marital estate during a divorce representation;

e.  Failing to do what a reasonably prudent attorney would have done in the same or similar circumstances to calculate the client's entitlement to an equitable division of the martial estate and to equitable spousal support during a divorce proceeding;

f.  Failing to do what reasonably prudent attorneys would do to communicate about a client's representation in which they were each participating;

g.  Handling a client's divorce without preparation adequate to the circumstances;

h.  Neglecting a matter entrusted to the attorney;

i.  Failing to act with reasonable diligence and promptness in representation of the client;

j.  Failing to keep the client reasonably informed about the status of the matter;

k.  Failing to comply with reasonable requests from the client for information;

l.  Acting in other ways to be discovered in this action;

m. Failing to act in other ways to be discovered this action.

119.  As a direct and proximate result of breaches of their duty owed to Ms. Norton, Defendants caused her substantial economic and non-economic harm.

WHEREFORE, Plaintiff requests a judgment against Defendants for whatever damages and other relief Plaintiff is found to be entitled, plus interest, costs, attorney's fees, and other or further relief the Court deems just, including, but not limited to:

a.  The lost value of equitable division of the martial estate to which Ms. Norton was entitled;

b.  The lost value of equitable spousal support to which Ms. Norton was entitled;

c.  Mental anguish caused by Defendants' malpractice;

d.  Embarrassment caused by Defendants' malpractice;

e.  Humiliation caused by Defendants' malpractice;

f.  Other non-economic damages caused by Defendants' malpractice; and,

g.  Exemplary damages.

## COUNT II –

## UNIFORM FRAUDULENT TRANSFERS ACT RELIEF
## DEFENDANTS CROWE, CROWE FIRM, AND CASCADE FIRM

120.    Plaintiff incorporates all preceding allegations by reference

121.    Ms. Norton is a creditor as defined by the Uniform Fraudulent Transfer Act, MCL 566.31, et. seq.

122.    One or more fraudulent transfers have been made by Defendants Crowe and Defendant Crowe Firm to Defendant Cascade Firm.

123.    These transfers were made with actual intent by Defendant Crowe and Defendant Crowe Firm to hinder, delay or defraud Ms. Norton as a creditor.

124.    Ms. Norton is entitled to relief under the Uniform Fraudulent Transfer Act, MCL 566.37, including, but not limited to, avoidance of the transfers, attachment against assets transferred, an injunction against further deposition of assets, appointment of a receiver to take charge of assets, and any other relief the Court deems appropriate.

WHEREFORE, Plaintiff requests a judgment against Defendants for whatever injunctive relief, damages and other relief Plaintiff is found to be entitled, plus interest, costs, attorney's fees, and other or further relief the Court deems just.

THE GOOGASIAN FIRM, P.C.

By /s/ Thomas H. Howlett
    Thomas H. Howlett (P57346)
    The Googasian Firm, P.C.
    Attorneys for Plaintiff
    6905 Telegraph Road, Suite 140
    Bloomfield Hills, MI 48301
    (248) 502-0862
    thowlett@googasian.com

Dated: February 9, 2026

## JURY DEMAND

Plaintiff Emma Norton demands a jury trial in this matter.


THE GOOGASIAN FIRM, P.C.

By /s/ Thomas H. Howlett
   Thomas H. Howlett (P57346)
   The Googasian Firm, P.C.
   Attorneys for Plaintiff
   6905 Telegraph Road, Suite 140
   Bloomfield Hills, MI 483031
   (248) 502-0862
   thowlett@googasian.com

Dated: February 9, 2026